THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. STEVEN TOWNSEND, Appellant.—

Defendant was indicted for murder committed on September 29, 1967. At that time he was 17 years old and a high school student living with his parents. He voluntarily appeared at the police station on September 30, 1967. The prosecution obtained three oral statements and one written one from him as a result of continuous questioning between 9:00 P.M. on that day and 2:30 A.M. on October 1, 1967. The three oral statements were suppressed after a *Huntley* hearing because the required warnings under *Miranda* v. *Arizona* (384 U. S. 436) had not been given to defendant. However, the written statement (the last to be obtained) was held admissible. It is the circumstances under which it was procured from defendant that concerns me. The court at the *Huntley* hearing found as fact that while the police were questioning defendant, his mother telephoned the precinct several times to ascertain whether her son was there and that each time she was informed by the desk officer that defendant was not there. The court declared that " This if an intentionally false tactic, is to be deplored ", but that " requests *by* the family are not deemed requests for counsel such as would command a halt to interrogation " (emphasis in original). As the written statement was the chief evidence of guilt, the conduct of the police in obtaining it must pass the test not only prescribed by *Miranda* (*supra*) but also by the requirements of due process. Requests by the family to see a defendant, it is true, do not amount to requests by the defendant to see counsel (*People* v. *Hocking,* 15 N Y 2d 973; *People* v. *Taylor,* 16 N Y 2d 1038) and do not render inadmissible otherwise validly

obtained statements of the defendant. But *Hocking* and *Taylor* do not reach the question presented here. In both of those cases the family knew where the defendant was being held by the police and took no further steps beyond the request to see him. No attempt was made by the police to conceal the presence of the defendant or to deceive the family when inquiry was made. I think the police cannot engage in tactics which close off access to a 17-year-old boy from his parents. The authorities may not engage in artifice or trickery in dealing with a suspect, out of which a statement is taken (cf. *People* v. *Leyra,* 302 N. Y. 353; *Leyra* v. *Denno,* 347 U. S. 556; *United States ex rel. Everett* v. *Murphy,* 329 F. 2d 68). Misleading answers by the police to inquiries concerning suspects have not been condoned by the courts (cf. *People* v. *Ressler,* 17 N Y 2d 174, 178; *Matter of Aaron D.,* 30 A D 2d 183, 185–186). In each case the issue whether the offensive conduct taints the resulting statement must be decided from the total circumstances. Here the continuous stream of interrogation, the age of defendant, the conceded invalidity of the first three statements, the action of the police in sealing off defendant from his parents, viewed as a whole, deprived defendant of the fundamental safeguards of due process. Though none of these circumstances alone might have had the effect of requiring the striking of the written statement which finally emerged, I am persuaded that together they constitute a breach of defendant's rights which preclude the use of the written statement against him. I do not think it must be shown that the parents would have furnished counsel to defendant. At best, this could not be more than speculation. Rather, it seems to me that speculation is stopped when the wrongful conduct of the police is shown, for the essential point is that defendant is entitled to fair treatment. We need go no further once unfair treatment is demonstrated.